## S11G1814. MAYOR & ALDERMEN OF THE CITY OF SAVANNAH v. BATSON-COOK COMPANY et al.

### (728 SE2d 189)

BENHAM, Justice.

A contractual dispute between the City of Savannah and its contractor, appellee Batson-Cook Company, and a sub-contractor, appellee Raito, Inc., concerning the design and construction of an underground parking garage in Chatham County resulted in the return of a multi-million-dollar jury verdict against the City and the entry of judgment thereon in Troup County. The Court of Appeals affirmed the judgment in *Mayor &c. of Savannah v. Batson-Cook Co.*, 310 Ga. App. 878 (714 SE2d 242) (2011). We granted the City's petition for a writ of certiorari to the Court of Appeals to decide whether that court erred when it determined the trial judge did not err when, having been presented with a motion to recuse him, he denied the motion rather than refer it to another judge. In the order granting the petition for a writ of certiorari, we asked the parties to address "whether the factual allegations presented on the motion to recuse were legally sufficient to require the motion to be presented to another judge for decision."

"All parties before the court have the right to an impartial judicial officer." *Stephens v. Stephens*, 249 Ga. 700, 702 (292 SE2d 689) (1982). The issue of judicial disqualification can rise to a constitutional level since "[a] fair trial in a fair tribunal is a basic requirement of due process." *In re Murchison*, 349 U. S. 133, 136 (75 SC 623, 99 LE 942) (1955). See also *Caperton v. A.T. Massey Coal Co.*, 556 U. S. 868 (129 SC 2252, 173 LE2d 1208) (2009). Judicial integrity is "a state interest of the highest order" because the power and prerogative of a court to resolve disputes rests upon the respect accorded by citizens to a court's judgments which, in turn, depends upon the issuing court's absolute probity. Id. at 889. "If the public lacks confidence in the impartiality of judges, or worse, refuses to comply with judicial decisions voluntarily, the notion that 'we are a government of laws' would necessarily collapse." Dmitry Bam, *Making Appearances Matter: Recusal and the Appearance of Bias*, 2011 B.Y.U. L. Rev. 943, 968. It is vital to the functioning of the courts that the public believe in the absolute integrity and impartiality of its judges (see *Smith v. Guest Pond Club*, 277 Ga. 143, 146 (586 SE2d 623) (2003)), and judicial recusal serves as a linchpin for the underlying proposition that a court should be fair and impartial. 2011 B.Y.U. L. Rev., supra at 949.[1]

---

[1] See also Canon 1 of the Georgia Code of Judicial Conduct:
An independent and honorable judiciary is indispensable to justice in our society.

States may adopt recusal standards more rigorous than required by due process, and because state statutes and state codes of judicial conduct provide more protection than due process requires, most disputes over disqualification and recusal of judges rarely implicate the constitutional standard. *Caperton v. A.T. Massey Coal Co.*, supra, 556 U. S. at 889. The codes of judicial conduct adopted by the States[2] "serve to maintain the integrity of the judiciary and the rule of law" (id.), and should be construed and applied to further the preservation of the integrity and independence of the judiciary. Canon 1, Georgia Code of Judicial Conduct. Judges are to "act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary" (Canon 2A) and "must avoid all impropriety and appearance of impropriety. . . ." Commentary on Canon 2A. See also *McElhanon v. Hing*, 151 Ariz. 403, 412 (728 P2d 273, 282) (1986) ("justice must not only be done fairly but . . . must be perceived as having been fairly done").

In Georgia, both OCGA § 15-1-8 and Canon 3 of the Georgia Code of Judicial Conduct are applicable when the issue of judicial recusal is considered. *Jones County v. A Mining Group*, 285 Ga. 465 (678 SE2d 474) (2009); *Stephens v. Stephens*, supra, 249 Ga. 700. OCGA § 15-1-8 prohibits a judge from sitting, without the consent of all parties, in a case or proceeding in which the judge is pecuniarily interested or is related within the sixth degree to any party interested in the result of the case or proceeding; or in a case or proceeding in which the judge has been of counsel or has presided in an inferior judicature when the judge's ruling or decision is the subject of review. Canon 3E of the Code of Judicial Conduct requires judges to "disqualify themselves in any proceeding in which their impartiality might reasonably be questioned . . ." and contains a non-exhaustive list of instances in which judges are required to recuse themselves. The Official Commentary to Canon 3E(1) states that "[u]nder this rule, judges are subject to disqualification whenever their impartiality might reasonably be questioned, regardless of whether any of the specific rules in Section 3E(1) apply."

---

Judges shall participate in establishing, maintaining and enforcing high standards of conduct, and shall personally observe such standards of conduct so that the integrity and independence of the judiciary may be preserved.

[2] The American Bar Association's Code of Judicial Conduct has been adopted, in one form or another, by forty-nine states and therefore governs judicial disqualification in almost all American state courts. Leslie W. Abramson, *Appearance of Impropriety: Deciding When a Judge's Impartiality "Might Reasonably Be Questioned,"* 14 Geo. J. Legal Ethics 55 (2000). See also 2011 B.Y.U. L. Rev., supra at 958.

Uniform Superior Court Rule 25[3] provides the procedural framework by which a motion to recuse a judge presiding in a particular case may be filed by a party and how said motion is to be resolved. USCR 25.1 provides the time frame within which the motion to recuse is to be filed and requires the motion to be in writing and to be accompanied by affidavits that present "all evidence thereon . . . [and] fully assert the facts upon which the motion is founded." The supporting affidavit must state the facts and reasons for the belief that bias or prejudice exists, being definite and specific as to time, place, persons, and circumstances of the extra-judicial conduct or statements demonstrating bias. Bare conclusions and opinions stated in the affidavit are not legally sufficient to support the motion or warrant further proceedings. USCR 25.2. The motion and supporting affidavits initially are presented to the judge whose recusal is sought; the judge immediately determines the timeliness of the motion, the legal sufficiency of the affidavits and, assuming any of the facts of the affidavits to be true, whether recusal would be warranted. USCR 25.3. If all three prongs are met, another judge is assigned to hear the motion to recuse. Id. The judge hearing the motion has the discretion to consider the motion solely on the affidavits or convene an evidentiary hearing, and the ruling on the merits of the motion shall be accompanied by written findings of fact and conclusions. USCR 25.6.

The focus of this case is on the threshold inquiries concerning the motion to recuse filed by the City: was the motion timely filed, were the affidavits supporting the motion legally sufficient, and did the affidavits aver facts that, when assumed to be true, would warrant the trial judge's recusal from hearing the case? If all three conditions precedent were met, the trial judge was required to refer the motion to another judge. See *Wall v. Thurman*, 283 Ga. 533 (5) (661 SE2d 549) (2008). See also *Gould v. State*, 273 Ga. App. 155 (4) (614 SE2d 252) (2005) (a motion to recuse may be denied as insufficient if it does not meet the three conditions precedent contained in USCR 25.3). In the order denying the motion, the trial judge made no finding with regard to the timeliness of the motion and determined that the affidavits attached to the motion were legally insufficient to warrant his recusal and that recusal would not be warranted even assuming the veracity of the facts set out in the affidavits.

---

[3] USCR 25, excluding current USCR 25.2, went into effect July 1, 1985. It codified the procedure for determining recusal that had been adopted by this Court in *State v. Fleming*, 245 Ga. 700 (1) (267 SE2d 207) (1980), when this Court deemed the "most acceptable" recusal procedure that which was embodied in judicial interpretations of 28 USCA § 144. *Isaacs v. State*, 257 Ga. 126 (355 SE2d 644) (1987). What is now USCR 25.2 was not included in the original rule (found at 253 Ga. 841), but was added, effective January 31, 1991.

The City's motion to recuse was accompanied by three affidavits executed by two attorneys who served as co-counsel for the City and a third attorney who represented the City with regard to the motion to recuse. The first affiant attested that trial counsel for Batson-Cook acknowledged to the affiant on October 1, 2008, that Nathan Lee, the signator identified as counsel for Batson-Cook on a letter to the sub-contractor's liability insurance carriers, was the nephew of Judge William F. Lee, Jr., the judge sitting in the case filed by the sub-contractor against Batson-Cook, which had filed a third-party complaint against the City, which had filed a counterclaim against Batson-Cook and cross-claims against insurance companies. The letter sent by Nathan Lee was on the letterhead of the law firm of Glover & Davis, which employed Nathan Lee as an associate. The affiant also averred that, in May 2008, Batson-Cook's trial counsel (i.e., not Glover & Davis) had requested the affiant to send by electronic mail the City's outstanding discovery requests to J. Littleton Glover at a Glover & Davis e-mail address, and that Batson-Cook's trial counsel had advised the affiant that Mr. Glover wished to talk with the City's counsel about the case, describing Mr. Glover as a lawyer "in charge" or the "leader." The affiant stated that thereafter he communicated directly with Mr. Glover about aspects of the case and concerning expert witnesses and schedules, without including Batson-Cook's counsel of record.

The affiant of the second affidavit attested that the trial judge had assigned this case to himself by order signed on March 27, 2008.[4] Affiant attached to his affidavit Batson-Cook's responses and objections to the City's interrogatories served on the City in June 2008, in which Batson-Cook disclosed that, prior to March 28, 2008, J. Littleton Glover had had a social conversation with Judge Lee and informed the judge that Batson-Cook was going to have a complex case in the Superior Court of Troup County and, in response to the judge's inquiry, that Glover & Davis was not serving as counsel for Batson-Cook in the matter. Batson-Cook also disclosed in its answers to the interrogatories that, prior to or on March 28, in response to a telephonic inquiry from the trial judge's secretary concerning the identity of the lawyers representing the parties in the litigation, Mr.

---

[4] USCR 3.1 requires that, unless a majority of the judges in a multi-judge circuit elect to adopt a different system, cases filed in the circuit shall be assigned by the superior court clerk according to a plan approved by the judges, with the Clerk having no power or discretion in determining the judge to whom any case is assigned. "The assignment system is designed to prevent any persons choosing the judge to whom an action is to be assigned...." There is nothing in the record concerning whether a majority of the judges of the Coweta Judicial Circuit, a multi-judge circuit, have elected to adopt a different system than that set forth in USCR 3.1.

Glover had stated his belief to his assistant that the attorneys were listed on the copies of the pleadings prepared by the law firm of Hunter Maclean and furnished to Mr. Glover. The affiant further attested that the trial judge had telephoned the affiant in July 2008 concerning the City's request for a hearing on a different motion and, in that conversation, the trial judge had indicated his belief that the City and the sub-contractor were "on the same side" of the lawsuit, had informed the affiant that he had no preconceived notions about the case and had assigned it to himself because it looked interesting, and had reiterated that he had no preconceived notions. Also attached to the affidavit were letters and e-mails dated July 18, 2006 – July 18, 2007 from J. Littleton Glover, as a partner of Glover & Davis, that indicated the status of Glover and Glover & Davis as general counsel to Batson-Cook and their representation of Batson-Cook in connection with the construction project and the dispute that gave rise to the lawsuit; and the letter signed by Nathan Lee on behalf of Glover & Davis, as attorney for Batson-Cook. Attached to the third affidavit were true and correct copies of records obtained from the Secretary of State of Georgia showing a number of companies for which J. Littleton Glover serves as the registered agent, with each company having as its chief executive officer the man who is the chief executive officer of Batson-Cook and who is the first cousin of J. Littleton Glover.

1. The Court of Appeals reviewed the trial judge's denial of the motion to recuse for abuse of discretion (*Mayor &c. of Savannah v. Batson-Cook Co.*, supra, 310 Ga. App. at 880), following a line of precedent that has its roots in *Central of Ga. R. Co. v. Lightsey*, 198 Ga. App. 59, 60 (400 SE2d 652) (1990). In *Lightsey*, the Court of Appeals adopted the "abuse of discretion" standard of review employed by federal courts on motions to recuse. This Court has not adopted the abuse of discretion standard when reviewing a trial judge's determination that a motion to recuse did not meet the tenets of USCR 25.3. See, e.g., *Patel v. State*, 289 Ga. 479 (5) (713 SE2d 381) (2011) (the trial court did not err in not referring the motion to another judge); *Wall v. Thurman*, supra, 283 Ga. at 536 ("we conclude that the trial court did not err in not referring the motion to recuse to another judge"); *Echols v. Echols*, 281 Ga. 546 (1) (a) (640 SE2d 257) (2007) ("we conclude that the trial court correctly ruled that . . . [the] recusal motion was not timely filed"); *Henry v. State*, 265 Ga. 732 (8) (462 SE2d 737) (1995) ("We agree [with the trial court's finding that the motion to recuse was legally insufficient since it was not in writing or accompanied by an affidavit]"). Federal courts review the denial of a motion to recuse based on 28 USCA § 455 for abuse of discretion, but conduct a de novo

review of the legal sufficiency of the affidavit of recusal when recusal is sought pursuant to 28 USCA § 144. 32 AmJur2d Federal Courts § 579.[5]

We do not take issue with the cases in which the Court of Appeals has applied the abuse-of-discretion standard to motions to recuse that did not involve the threshold requirements of USCR 25.3. See e.g., *Lightsey*, supra. See also *Vaughn v. State*, 247 Ga. App. 368 (2) (543 SE2d 429) (2000) (where neither USCR 25.3 nor its tripartite test is mentioned). It is only the use of the abuse of discretion standard to review a trial judge's decision pursuant to USCR 25.3 with which we are concerned. USCR 25.3 does not authorize a discretionary determination on the part of the trial judge presented with a motion and affidavit to recuse — the Rule states that another judge shall be assigned to hear the recusal motion if the motion is timely, the affidavit legally sufficient, and the facts set forth in the affidavit, when taken as true, would authorize recusal. Deciding whether the motion is timely, whether the affidavit is legally sufficient, and whether the facts asserted authorize recusal under any of the factual scenarios set forth in OCGA § 15-1-8 and Canon 3E(1) does not require the exercise of discretion; rather, they present questions of law, for which the appropriate standard of review is de novo. Appellate review of decisions to deny a motion to recuse because the motion and affidavit do not meet the requirements of USCR 25.3 is similar to appellate review of decisions holding that an expert's affidavit filed pursuant to OCGA § 9-11-9.1 does not meet the statutory requirements. In such cases, de novo review is accorded to a trial court's ruling concerning the legal sufficiency of an expert affidavit. *Houston v. Phoebe Putney Mem. Hosp.*, 295 Ga. App. 674, 678 (673 SE2d 54) (2009). Accordingly, we overrule those appellate decisions which employ the abuse of discretion standard in an appeal from the trial court's denial of a motion to recuse because it did not meet the criteria of USCR 25.3. See, e.g., *Moore v. State*, 313 Ga. App. 519 (722 SE2d 160) (2012); *Grant v. State of Ga.*, 304 Ga. App. 133 (1) (695 SE2d 420) (2010); *Ga. Kidney & Hypertension Specialists v. Fresenius USA Marketing*, 291 Ga. App. 429 (1) (662 SE2d 245) (2008); *Adams v. State*, 290 Ga. App. 299 (3) (659 SE2d 711) (2008); *Keller v. State*,

---

[5] 28 USCA § 455 governs the disqualification of all justices, judges, and magistrates of the United States, and lists statutory grounds for disqualification. 28 USCA § 144 is applicable only to district court judges and requires the timely presentation of a party's affidavit of bias and prejudice that states with particularity facts and reasons for the belief of the existence of the judge's bias or prejudice, that describes extra-judicial conduct and that, when taken as true, would convince a reasonable person of the judge's bias or prejudice. 32 AmJur2d Federal Courts § 559.

286 Ga. App. 292 (2) (648 SE2d 714) (2007); *Hill v. Clayton County Bd. of Commrs.*, 283 Ga. App. 15 (3) (640 SE2d 638) (2006); *In the Interest of J. E. T.*, 269 Ga. App. 567 (2) (604 SE2d 623) (2004).

2. We now examine de novo the trial judge's application of USCR 25.3 to the motion to recuse and its supporting affidavits.

(a) The motion to recuse was filed timely on October 8, 2008. USCR 25.1 requires the motion to be filed "not later than five (5) days after the affiant first learned of the alleged grounds for disqualification . . . unless good cause be shown for failure to meet such time requirements." It was on Wednesday, October 1, 2008, that Batson-Cook counsel responded affirmatively to the inquiry of the City's counsel about any relationship between the trial judge and Nathan Lee, and the motion to recuse was filed within five days of that response, excluding Saturdays and Sundays. See OCGA § 1-3-1 (d) (3) (when a statute prescribes a period of time of less than seven days for a filing, intermediate Saturdays, Sundays, and legal holidays are excluded when calculating the due date).

(b) We now turn to the affidavits to see whether they meet the second and third inquiries under USCR 25.3, i.e., whether they are legally sufficient and set forth facts that, if true, warrant recusal. See *Morgan v. Propst*, 301 Ga. App. 402 (1) (c) (688 SE2d 357) (2009), aff'd, *Propst v. Morgan*, 288 Ga. 862 (708 SE2d 291) (2011).

(i) The affidavits accompanying the motion were legally sufficient. Each affidavit contained the three elements essential to a complete affidavit: "(a) a written oath embodying the facts as sworn by the affiant; (b) the signature of the affiant; and (c) the attestation by an officer authorized to administer the oath that the affidavit was actually sworn by the affiant before the officer.' [Cit.]" *Auito v. Auito*, 288 Ga. 443 (704 SE2d 789) (2011). The affidavits also met the criteria of USCR 25.2, as they contained definite and specific foundational facts of the trial judge's extra-judicial conduct demonstrating a purported lack of impartiality and were not stated in conclusory fashion or as a matter of opinion. Compare *Moore v. State*, supra, 313 Ga. App. at 521 (stating that the lack of specific and definite information in the affidavit in that case prevented any reasonable questioning of the trial judge's impartiality).

(ii) The last of the three inquiries a trial judge is required by USCR 25.3 to make immediately when presented with a motion to recuse the judge is to consider whether the facts contained in the affidavits, when taken as true, would authorize recusal. The rationale for requiring the judge to take as true the affidavit's facts even when the judge knows the facts are not true "is easy to divine. To commit to the judge a decision upon the truth of the facts gives chance for the evil against which the [rule] is directed." *Berger v. United*

*States*, 255 U. S. 22, 36 (41 SC 230, 65 LE 481) (1921). Canon 3E(1) requires a judge to recuse in any proceeding in which the judge's "impartiality might reasonably be questioned." The comprehensive concern for judicial impartiality found in Canon 3E(1) provides a broader rule of disqualification than does OCGA § 15-1-8. See *Jones County v. A Mining Group*, supra, 285 Ga. at 465; *Stephens v. Stephens*, supra, 249 Ga. 700 (2). See also Deborah Goldberg, James Sample, and David E. Pozen, *The Best Defense: Why Elected Courts Should Lead Recusal Reform*, 46 Washburn L.J. 503, 514 (2007). Canon 3E(1) is "an inclusive catch-all provision for analysis of alleged disqualifying judicial conduct" and sets a general standard that the appearance of partiality requires recusal, followed by specific examples of disqualifying conditions. Leslie W. Abramson, *Appearance of Impropriety: Deciding When a Judge's Impartiality "Might Reasonably Be Questioned,"* 14 Geo. J. Legal Ethics 55, 59 (2000). Canon 3E(1)'s requirement that recusal is warranted in any proceeding in which the judge's "impartiality might reasonably be questioned . . ." sets out an objective standard (*Eastside Baptist Church v. Vicinanza*, 269 Ga. App. 239, 240 (603 SE2d 681) (2004)) — the facts of the affidavit, taken as true, must be considered from the perspective of a reasonable person rather than from the perception of interested parties or their lawyer-advocates (see *Jones County v. A Mining Group*, supra, 285 Ga. at 466), or from the subjective perspective of the judge whose continued presence in the case is at issue. See 14 Geo. J. Legal Ethics, supra at 58. We have construed the phrase "impartiality might reasonably be questioned" to mean whether a fair-minded and impartial person would have a reasonable perception of a judge's lack of impartiality based upon objective facts set forth in the affidavit or reasonable inferences therefrom. *Jones County v. A Mining Group*, supra, 285 Ga. at 466.

In the case before us, the familial relationship between the judge and an attorney who had represented one of the parties in the underlying dispute that resulted in the litigation and who was employed by a firm, a partner of which was general counsel to a party in the case, who acted at times as if counsel of record, and whose conversation with the trial judge advising him of the existence of the case was followed by the trial judge's assignment of the case to himself, are objective facts which we conclude would cause a fair-minded and impartial person to have a reasonable perception of the trial judge's lack of impartiality. Since the affidavits raised a reasonable question about the trial judge's impartiality that required the assignment of the motion to recuse to another judge, the Court of Appeals erred when it affirmed the trial judge's denial of the motion to recuse for failure to meet the requirements of USCR 25.3. We

reverse the judgment of the Court of Appeals and remand the case to that court with direction that the case be remanded to the Superior Court of Troup County for disposition of the motion to recuse by a different judge. *Gillis v. City of Waycross*, 247 Ga. App. 119, 122 (543 SE2d 423) (2000).

*Judgment reversed and case remanded with direction. All the Justices concur.*

DECIDED MAY 29, 2012.

*Cohen, Pollock, Merlin & Small, Gregory K. Morgan, James B. Blackburn, Elizabeth B. Hodges, Peter A. Giusti*, for appellant.

*Willis & McKenzie, Charles J. Willis, Mark L. Degennaro, Ellis, Painter, Ratterree & Adams, Robert S. Glenn, Jr., Smith, Pachter & McWhorter, Brian J. Vella, Adam M. Hames, Stanley Karsman, Jennifer A. Mahar*, for appellee.